

# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KEVIN DUANE HARRELL | Case Number: 1816-CV10998 |
| Plaintiff/Petitioner:<br>ZACHARY SMITH | Plaintiff's/Petitioner's Attorney/Address<br>WILLIAM CHARLES KENNEY<br>1100 Main Street<br>SUITE 1800 |
| vs. | KANSAS CITY, MO 64105 |
| Defendant/Respondent:<br>TRUMAN ROAD DEVELOPMENT, LLC<br>DBA: NO OTHER PUB | Court Address:<br>05-NOV-2018, 09:00 AM<br>DIVISION 18 |
| Nature of Suit:<br>CC Other Tort | 415 E 12th<br>KANSAS CITY, MO 64106 |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: TRUMAN ROAD DEVELOPMENT, LLC
                         DBA: NO OTHER PUB

R/A CSC-LAWYERS INC SERVICE CO
221 BOLIVAR ST
JEFFERSON CITY, MO 65101



COURT SEAL OF

JACKSON COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

    20-JUL-2018
        Date                                       Clerk

Further Information:

---

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
  Printed Name of Sheriff or Server                Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

   *(Seal)*

My commission expires: _____         _____
                       Date                          Notary Public

| | | |
|---|---|---|
| **Sheriff's Fees** | | |
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $_____ | (_____ miles @ $_____ per mile) |
| **Total** | $_____ | |

**EXHIBIT**

**A**

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

IN THE 16ᵀᴴ JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| **ZACHARY SMITH, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | Case No.: 1816-CV10998 |
| vs. | |
| **TRUMAN ROAD DEVELOPMENT, LLC d/b/a NO OTHER PUB** <br> <u>Serve at Registered Agent</u>: <br> **CSC-Lawyers Incorporating Service Company** <br> **221 Bolivar Street** <br> **Jefferson City, MO 65101** | Division:   10 <br><br> **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## FIRST AMENDED CLASS ACTION PETITION FOR DAMAGES {X1}

Plaintiff Zachary Smith, individually and on behalf of all others similarly situated, brings this action against Defendant Truman Road Development, LLC d/b/a No Other Pub ("No Other Pub") to secure redress for No Other Pub's practice of sending text messages to cellular telephone numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. Plaintiff, for his class action complaint, alleges as follows based upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by counsel:

### PARTIES, JURISDICTION, AND VENUE

1.      Prior to November 2017, Plaintiff was a resident of Platte County, Missouri.

2.      Defendant No Other Pub is a Missouri limited-liability company with its principal place of business at 1370 Grand Boulevard, Kansas City, Jackson County, Missouri 64106.

3.      Defendant No Other Pub can be served through its registered agent CSC-Lawyers

Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

4.     Pursuant to RSMo § 506.500, jurisdiction is proper in this Court because Defendant has transacted business in Jackson County, Missouri and/or because the tortious acts complained of in this Petition, or some part of the acts, occurred in Jackson County, Missouri.

5.     Pursuant to RSMo § 508.010, venue is proper in this Court because the tortious acts complained of herein arose and took place within Jackson County, Missouri, and/or the transactions at issue, or some part of the transactions, took place within Jackson County, Missouri.

6.     Further, jurisdiction and venue are proper pursuant to 47 U.S.C. § 227(b)(3), which grants state courts jurisdiction over actions alleging violations of 47 U.S.C § 227.  On information and belief, No Other Pub has sent the same or similar text messages complained of by Plaintiff to others within this judicial district, such that a substantial portion of the events giving rise to this cause of action occurred here.

7.     In addition, No Other Pub also transacts significant amounts of business within this district, solicits customers here, directs telephone calls and text messages here – including to the cellular telephone numbers of consumers and businesses with area codes specific to Jackson County, Missouri,[1] and enters into consumer and business contracts here, thereby subjecting it to the jurisdiction of this Court.

### NATURE OF THE ACTION

8.     No Other Pub is a drinking establishment.

9.     Between April 25, 2014 and April 4, 2018, in order to advertise and market its products and services, to increase revenue, to expand its customer base, and to pursue other

---

[1]    *See Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 643 (N.D. Ill. 2017) (placing a call to a phone number with an Illinois-affiliated area code constitutes "purposeful direction" warranting the Court's exercise of jurisdiction) (*citing Keim v. ADF Midatlantic*, 199 F. Supp. 3d 1362, 1370 (S.D. Fl. 2016) (collecting cases)).

marketing objections, No Other Pub caused advertising and/or telemarketing text messages to be sent to the cellular telephones of Plaintiff and the putative class members in violation of the TCPA.

10.     Specifically, No Other Pub (either directly or through a third-party telemarketer) sent unsolicited text messages to the cellular telephones of Plaintiff and the putative class members promoting specials and events at No Other Pub and encouraging Plaintiff and the putative class members to visit No Other Pub with their friends or associates.

11.     By sending the text messages at issue in this Complaint, No Other Pub has caused Plaintiff and the putative class members (as defined herein) actual harm.

12.     On information and belief, No Other Pub routinely sends these text messages despite the fact that Plaintiff and the putative class members:

> (a)     never provided prior express consent in writing, or otherwise, for No Other Pub to send advertising or telemarketing text messages to their cellular telephone numbers; and/or
>
> (b)     never provided prior express consent in writing, or otherwise, for No Other Pub to send text messages to their cellular telephone numbers using an automatic telephone dialing system (as defined by the TCPA).

13.     No Other Pub also sent such advertising and/or telemarketing text messages to Plaintiff and other putative class members even though (i) it failed to establish written policies and procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, and train its staff in compliance with such policies and procedures, and/or (ii) Plaintiff and other putative class members have registered their telephone numbers on the national do-not-call registry.

14.     Plaintiff, on his own behalf and on behalf of all others similarly situated, brings the

3

instant lawsuit seeking an injunction requiring No Other Pub to cease all unsolicited text message activities and for an award of statutory damages to Plaintiff and members of the putative class under the TCPA.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. § 227, *et seq.*

15.　　Advancements in telephone dialing technology since the 1980s and 90s have made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.

16.　　Senator Hollings, sponsor of the TCPA, described such marketing practices as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1990).

17.　　The FCC recently noted, "every month, U.S. consumers are bombarded by an estimated 2.4 billion robocalls." *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Notice of Proposed Rulemaking, Statement of Chairman Pai, 32 FCC Rcd. 2306, 2331 (2017) (emphasis added). That number has since increased to an estimated 2.5 billion robocalls per month as of October 2017.[2]

18.　　In response to these unwanted telephone calls, text messages, and junk faxes, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses. As Congress recognized:

> Many customers are outraged over the proliferation of intrusive,

---

[2]　　*See In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Report and Order and Further Notice of Proposed Rulemaking, Statements of Commissioners Clyburn and Rosenworcel, 32 FCC Rcd. 9706, 9756 & 9759 (2017).

nuisance calls to their homes from telemarketers. ... *Banning such automated or prerecorded telephone calls* to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, *is the only effective means of protecting telephone consumers from this nuisance and privacy invasion*.

Pub. L. No. 102-243 §§ 2(6) & (12) (1991), *codified at* 47 U.S.C. § 227 (emphasis added).[3]

19. As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service, ..." 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

20. For purposes of the TCPA, "[a] text message to a cellular telephone ... qualif[ies] as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (citation omitted).[4]

21. "Automatic telephone dialing system" ("ATDS") refers to any equipment that has the "capacity to dial numbers without human intervention[.]" *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (*citing In re Rules & Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order")).

22. In 2012, the FCC – the agency tasked with promulgating the implementing regulations of the TCPA – revised its TCPA rules to require *prior express written consent* before

---

[3]     *See also Zean v. Fairview Health Servs.*, 858 F.3d 520, 522-23 (8th Cir. 2017) ("Recognizing that automated calls are often a nuisance and an invasion of privacy, Congress passed the TCPA to balance individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade.") (internal citations and quotation marks omitted).

[4]     *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 30 FCC Rcd. 12484, 12485, ¶ 3 (2016) (the TCPA's prohibition on robocalls "encompasses both voice and text calls, including short message service (SMS) calls and text calls and text calls made using Internet-to-phone technology, ...").

initiating a telephone call "that includes or introduces an advertisement or constitutes telemarketing[.]" 47 C.F.R. § 64.1200(a)(2); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6589, ¶ 37 & fn. 113 (2013) ("Dish Network Ruling").

23.     According to FCC regulations, "*prior express consent*" must (i) be in writing; (ii) be signed by the person providing the consent; (iii) clearly authorize the calling party to use an ATDS or artificial or pre-recorded voice; (iv) specify the telephone number to which the person is consenting to be called; and (v) not be a condition of purchasing any goods or services. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, 27 FCC Rcd. 1830, 1843, ¶ 32 (2012) ("2012 TCPA Order").

24.     In 2003, the FCC adopted a national do-not-call registry to provide consumers with an option to prohibit unwanted telemarketing solicitations. *2003 TCPA Order* at 14034-35, ¶ 28.

25.     The FCC rules also prohibit any person or entity from initiating a telemarketing solicitation to any "residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). For purposes of this provision of the TCPA, wireless subscribers who are registered on the national do-not-call list are presumed to be "residential subscribers." *2003 TCPA Order* at 14038-39, ¶ 36.

26.     The FCC rules also require telemarketers to maintain a company-specific internal do-not-call list, to immediately record a consumer's do-not-call request, and to cease any further telemarketing calls within thirty days of such request. 47 C.F.R. § 64.1200(d)(3).

27.     The FCC's regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a call is an "advertisement" depends on the content of the material. *Golan v. Veritas*

*Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the telephone call or message, rather than its content. *Golan*, 788 F.3d at 820.

29.     The FCC has also made rulings regarding the TCPA's vicarious liability standards as they relate to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995).

30.     The FCC has also clarified that vicarious liability is imposed under federal common law principles of agency for violations of either sections 227(b) or (c) that are committed by third-party telemarketers. *Dish Network Ruling* at 6580 & ¶ 18.

31.     The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where defendant's conduct was done willfully or knowingly. 47 U.S.C. §§ 227(b)(3) and (c)(5).

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32.     Between April 25, 2014 and April 4, 2018, No Other Pub and/or its agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiff and the putative class members.

33.     Specifically, the hardware and software used by No Other Pub and/or its agents has the capacity to generate and store random numbers, or store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

Electronically Filed - Jackson - Kansas City - July 17, 2018 - 02:52 PM

34. Plaintiff and the putative class never provided prior express consent, in writing or otherwise, for No Other Pub to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

35. No Other Pub (i) requires consumers or businesses to provide their telephone numbers as a condition of providing happy-hour goods and services, (ii) does not advise consumers or businesses it intends to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone number, and (iii) does not obtain prior express consent, written or otherwise, to send autodialed, advertising, and/or telemarketing text messages to the consumer's or business's cellular telephone number.

36. When No Other Pub obtains the cellular telephone number of a consumer or business, it adds it to a stored list of numbers to which No Other Pub and/or its agents repeatedly send autodialed, advertising, and/or telemarketing text messages.

37. No Other Pub's text messages are sent with equipment having the capacity to dial numbers without human intervention, the equipment is unattended by human beings, and the equipment does, in fact, send text messages automatically, *i.e.*, without human intervention.

38. The equipment employed by No Other Pub and/or its agents not only has the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers) but was programmed to sequentially or randomly access stored telephone numbers to automatically send text messages to those numbers.

39. The text messages sent by No Other Pub to Plaintiff and the putative class were made for a commercial purpose in that they contain its brand name and location, they promote specials and events at No Other Pub, and/or they encourage Plaintiff and the putative class members to visit No Other Pub with their friends or associates.

40.     No Other Pub's text messages are advertisements and/or constitute telemarketing as defined by the TCPA.

41.     Not only does No Other Pub fail to obtain prior express consent before sending such text messages, No Other Pub's text messages do not provide a way of opting out of future text messages.

42.     No Other Pub sent such advertising and/or telemarketing text messages without first establishing written policies or procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, as required by 47 C.F.R. § 64.1200(d), and No Other Pub failed to train its staff in compliance with such policies and procedures.[5]

43.     No Other Pub sent these text messages to Plaintiff and other putative class members' cellular telephone numbers who have their telephone numbers registered with the national do-not-call registry.

44.     On information and belief, many of No Other Pub's text messages were sent within 12 months of one or more prior text messages, and No Other Pub lacks an adequate system for preventing the transmission of numerous automated text messages to the same telephone number.

45.     No Other Pub is aware that the above-described text messages are being sent to consumers and businesses without their prior express consent and to consumers and businesses who have registered their phone numbers on the do-not-call registry, but No Other Pub willfully continues to send them anyways.

46.     Plaintiff and the putative class members have been substantially damaged by No

---

[5]     On May 21, 2018, Plaintiff requested that No Other Pub provide his attorneys with a copy of any written policies and procedures that No Other Pub had established and implemented and/or instituted as of (1) August 1, 2014, (2) February 13, 2018, and (3) April 4, 2018, to ensure compliance with the TCPA, but Defendant failed to produce any such policies and procedures.

Other Pub's repeated text messages[6] – their privacy was invaded; they were annoyed and inconvenienced; the repeated text messages intruded upon their seclusion and interfered with the exclusive use of their property; they were charged out of pocket cellular airtime minutes for the text messages and cellular data for services related to the text message content;[7] the ATDS calls intruded upon and occupied the capacity of the cellular phones of Plaintiff and the class members, depleted and/or reduced the lifespan of their cellular phone batteries,[8] caused Plaintiff and the class members to incur the costs of electricity to recharge their phones;[9] and, on information and belief, No Other Pub's repeated text messages have caused unwanted use, damage and/or depletion of their property, including, but not limited to, a reduction in the lifespan of their LCD screens, speakers, vibration motors, and other hardware and/or electronic components.

---

[6]     *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (allegations of "[u]nsolicited phone calls or text messages … invade the privacy and disturb the solitude of their recipients" and are sufficient to confer Article III standing); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3rd Cir. 2017) (same); *Williams v. zZounds Music, L.L.C.*, No. 16-cv-940 (W.D. Mo. Feb. 28, 2017) (same) (*citing Van Patten*); *Hunsinger v. Gordmans, Inc.*, No. 16-cv-162, 2016 WL 7048895 (E.D. Mo. Dec. 5, 2016) (same).

[7]     *See In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red. 559, 562, ¶ 7 (2008) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (recipients are damaged because they are charged "out of pocket" cellular airtime minutes); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tx. 2012) (Plaintiff's statement that he pays a third-party provider for cellular phone services is sufficient to show that an individual was charged for the calls); *Warnick v. Dish Network LLC*, No. 12-cv-01952 (D. Co. Sep. 30, 2014) ("users of cellular telephone numbers *are indeed charged* for incoming calls, regardless of whether they incur any *additional* charges for such calls.").

[8]     *See e.g.*, Apple Inc., *Battery Servicing and Recycling*, http://www.apple.com/batteries/service-and-recycling ("All rechargeable batteries have a limited lifespan … Your own battery's lifespan will vary depending on how you use your device …").

[9]     *See Mey v. Got Warranty, supra fn. 2*, 193 F. Supp. 3d at 645-47 (Intangible harms include "intrusion upon and occupation of the plaintiff's cell phone. … [and] intrusion upon another person's computerized electronic equipment …" Tangible harms, including the cost of electricity, "[w]hile certainly small, [are] real, and the cumulative effect could be consequential.").

Electronically Filed - Jackson - Kansas City - July 17, 2018 - 02:52 PM

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF SMITH

47.     At all times relevant hereto, Plaintiff Smith has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone ending in "1154".

48.     Plaintiff Smith visited No Other Pub during a happy hour.

49.     As a condition to providing Plaintiff with its happy-hour special prices, and at the request of No Other Pub, Plaintiff was required to provide his phone number in order to obtain the happy-hour discounts on food and drinks.

50.     On multiple occasions, with the most recent message occurring on January 10, 2018, No Other Pub and/or its agents caused text messages to be sent, automatically and without human intervention, to Plaintiff's cell phone.

51.     The text messages contained No Other Pub's brand name and location, promoted specials and events at No Other Pub, and/or encouraged Plaintiff to visit No Other Pub with their friends or associates.

52.     The text messages sent by No Other Pub to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

53.     No Other Pub did not provide Plaintiff and the class members with notice that it intended to send multiple autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers; and Plaintiff and the class members never provided express consent in writing, or otherwise, for No Other Pub to send such text messages to their cell phones.

54.     On November 2, 2007, Plaintiff Smith registered his wireless number ending in 1154 with the national do-not-call registry and received confirmation that his registration would be effective as of December 3, 2007.

55. Since the effective date of Plaintiff's registration on the national do-not-call list and between April 25, 2014 and April 4, 2018, No Other Pub has sent numerous advertising and/or telemarketing text messages to Plaintiff, many of which were within 12 months of one or more prior text messages.

### CLASS ACTION ALLEGATIONS

56. Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

57. As to Count I for violation of the TPCA (the "227(b)(1)(A)(iii) Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons and entities within the United States to whom No Other Pub (or a third party on No Other Pub behalf) sent a text message to their cellular or wireless telephone, promoting special pricing or events at No Other Pub, between April 25, 2014 and April 4, 2018.

58. As to Count II for violation of the TPCA (the "64.1200(d) Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States to whom, between April 25, 2014 and April 4, 2018, No Other Pub (or a third party on No Other Pub behalf) sent more than one text message promoting special pricing or events at No Other Pub, within any twelve-month period.

59. As to Count III for violation of the TPCA (the "227(c) Class"), Plaintiff brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States whose phone numbers were registered on the national do-not-call registry and to whom, between April 25, 2014 and April 4, 2018, No Other Pub (or a third party on No Other Pub behalf) sent more than one text message promoting special pricing or events at No Other Pub, within any twelve-month period.

60. Excluded from the above-defined classes are No Other Pub, any entity in which No Other Pub has a controlling interest, No Other Pub's officers, directors, and employees, No Other

Electronically Filed - Jackson - Kansas City - July 17, 2018 - 02:52 PM

Pub's counsel, any persons or entities who have previously settled a TCPA claim with No Other Pub, the Court and Court personnel, and Plaintiff's counsel.

61. **Numerosity – Mo. R. Civ. P. 52.08(a)(1); Fed. R. Civ. P. 23(a)(1).** Plaintiff does not know how many members are in the putative class but believes them to be in the tens of thousands, if not more. On information and belief, the number of class members is so numerous that their individual joinder is impracticable. The precise number of putative class members and their phone numbers can be obtained from information and records in the possession and control of No Other Pub or third parties acting on No Other Pub's behalf.

62. **Existence and Predominance of Common Questions of Law and Fact – Mo. R. Civ. P. 52.08(a)(2) & 52.08(b)(3); Fed. R. Civ. P. 23(a)(2) & 23(b)(3).** Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member. The predominating common legal and factual questions, each of which may also be certified under Mo. R. Civ. P. 52.08(c)(4) or Fed. R. Civ. P. 23(c)(4), include the following:

        (a)    Whether No Other Pub and/or its agents used an automatic telephone dialing system to send text messages;

        (b)    Whether the equipment used by No Other Pub, or a third party on No Other Pub's behalf, has the capacity to send text messages automatically, *i.e.*, without human intervention;

        (c)    Whether No Other Pub's text messages are advertisements;

        (d)    Whether No Other Pub's text messages constitute telemarketing;

        (e)    Whether No Other Pub requires its customers provide their telephone numbers as a condition of providing goods and services;

Electronically Filed - Jackson - Kansas City - July 17, 2018 - 02:52 PM

(f)     Whether No Other Pub advised Plaintiff and the class members that it intended to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers;

(g)     Whether No Other Pub obtained the prior express consent, written or otherwise, to send autodialed, advertising, and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members;

(h)     Whether No Other Pub's text messages were sent for an emergency purpose;

(i)     Whether No Other Pub's text messages were sent willfully or knowingly;

(j)     Whether No Other Pub (i) established and implemented written procedures to comply with the national do-not-call rules; (ii) trained its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintained a list of telephone numbers No Other Pub may not contact; (iv) employed a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call or text is made, and (v) maintained records documenting this process;

(k)     Whether No Other Pub (i) established and implemented written procedures to comply with the internal do-not-call rules; (ii) trained its personnel in procedures established pursuant to the internal do-not-call rules; (iii) maintained an internal list of telephone numbers No Other Pub may not contact; (iv) employed a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made,

14

Electronically Filed - Jackson - Kansas City - July 17, 2018 - 02:52 PM

and (v) maintained records documenting this process; and/or

(l)     Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

63.    **Typicality – Mo. R. Civ. P. 52.08(a)(3); Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the putative classes he seeks to represent. The factual and legal bases of No Other Pub's liability to Plaintiff is the same for all putative class members: (i) No Other Pub violated the TCPA by using an automatic telephone dialing system to send text messages without obtaining prior express written consent in writing or otherwise; (ii) No Other Pub violated the TCPA by sending multiple promotional text messages without complying with the requirements of 47 C.F.R. § 64.1200(d) and/or 47 U.S.C. § 227(c).

64.    **Adequacy of Representation – Mo. R. Civ. P. 52.08(a)(4); Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the putative class members. Plaintiff has no interests that might conflict with the interests of the putative class members. Plaintiff will pursue the claims vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

65.    **Superiority – Mo. R. Civ. P. 52.08(b)(3); Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against No Other Pub. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would

15

create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

## COUNT I
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

66.      Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

67.      No Other Pub and/or its agents employed an ATDS to send non-emergency text messages, automatically and without human intervention, to the cellular or wireless telephones of Plaintiff and the members of 227(b)(1)(A)(iii) Class.

68.      No Other Pub requested, and obtained, the cellular telephone numbers of many of the 227(b)(1)(A)(iii) Class members as a condition to providing its goods and services.

69.      No Other Pub never obtained prior express consent in writing, or otherwise, advising Plaintiff or the members of the 227(b)(1)(A)(iii) Class that it intended to send autodialed, advertising, and/or telemarketing text messages to their cellular or wireless telephones.

70.      As a result of No Other Pub's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the 227(b)(1)(A)(iii) Class were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

71.      Plaintiff and the 227(b)(1)(A)(iii) Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

72.      No Other Pub's text messages were willful and knowing, in that No Other Pub

16

knew it was obtaining and storing cellular telephone numbers and employing equipment that would send autodialed, advertising, and/or telemarketing text messages to such numbers; No Other Pub intended that such equipment would in fact send automated text messages containing its brand name and location, and promoting specials and events at No Other Pub; and No Other Pub knew that it had not obtained prior express consent in writing, or otherwise, from Plaintiff or any of the putative class members to send such text messages.

73.    "Willful ... means that the violator knew that he was doing the act in question. ... A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

74.    Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 227(b)(1)(A)(iii) Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 227(b)(1)(A)(iii) Class, seeks $1,500 per violation of the TCPA; a declaration that No Other Pub's telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. § 227, *et seq.*; an injunction prohibiting No Other Pub from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## COUNT II
### VIOLATIONS OF THE TCPA, 47 C.F.R. § 64.1200(d)

75.    Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

76.    No Other Pub's text messages were made for a commercial purpose, in that they contain its brand name and location, they promote specials and events at No Other Pub, and/or

17

they encourage Plaintiff and the putative class members to visit No Other Pub with their friends or associates.

77.     No Other Pub sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the 64.1200(d) Class even though No Other Pub did not first institute procedures for initiating telemarketing calls or text messages that meet (or exceed) the following minimum standards:

- Written policies and procedures, available upon demand, for maintaining a do-not-call list;

- Policies and procedures for the training of personnel engaged in any aspect of telemarketing, on the existence and use of the do-not-call list;

- Policies and procedures for the recording of any request not to receive calls, at the time the request is made, including the subscriber's name, if provided, and telephone number, and honoring any such requests within a reasonable time from the date such request is made.

- Policies and procedures for employing a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made;

- Policies and procedures for providing the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted; and

- Policies and procedures for maintaining records documenting this process, for a period of not less than 5 years.

78.     On information and belief, No Other Pub is not a tax-exempt nonprofit organization and is therefore required to comply with the minimum standards set forth in 47 C.F.R. § 64.1200(d). *See* 47 C.F.R. § 64.1200(d)(7).

79.     On May 21, 2018, Plaintiff demanded a copy of No Other Pub's written policies and procedures for ensuring compliance with the TCPA, but Defendant did not respond to

Plaintiff's request.

80.     On information and belief, No Other Pub did not implement any of the minimum standards required by 47 C.F.R. § 1200(d)(1)-(6).

81.     No Other Pub's text messages do not sufficiently identify the name of the individual caller, and do not provide a (working) telephone number[10] or address at which the person or entity may be contacted.

82.     As a result of No Other Pub's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the 64.1200(d) Class were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

83.     Plaintiff and the 64.1200(d) Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

84.     No Other Pub's text messages were willful and knowing, in that No Other Pub knew it was sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members without first implementing procedures required by 47 C.F.R. § 64.1200(d), but No Other Pub chose to send such text messages anyways.

85.     "Willful ... means that the violator knew that he was doing the act in question. ... A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

86.     Accordingly, the Court should treble the amount of statutory damages available to

---

[10]     No Other Pub's text messages do not provide a telephone number, toll-free or otherwise, for consumers and businesses to call in order to opt out of future text messages. Additionally, if you call the telephone numbers No Other Pub used to send a text message to Plaintiff cellular telephone number on January 10, 2018, you are greeted with a message that states, "We're sorry, you've reached a telephone number that has been disconnected or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again."

Plaintiff and the 64.1200(d) Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 64.1200(d) Class, seeks $1,500 per violation of the TCPA; a declaration that No Other Pub's telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. § 227, *et seq*.; an injunction prohibiting No Other Pub from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

### COUNT III
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)

87.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

88.     No Other Pub's text messages were made for a commercial purpose, in that they contain its brand name and location, they promote specials and events at No Other Pub, and/or they encourage Plaintiff and the putative class members to visit No Other Pub with their friends or associates.

89.     No Other Pub sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the 227(c) Class after their telephone numbers had been registered on the national do-not-call registry for more than 31 days.

90.     These advertising and/or telemarketing text messages were made even though No Other Pub did not obtain prior express consent in writing, or otherwise, to send such text messages to Plaintiff or the 227(c) Class.

91.     On May 21, 2018, Plaintiff demanded a copy of No Other Pub's written policies and procedures for ensuring compliance with the TCPA, but Defendant did not respond to Plaintiff's request.

92.     As a result of No Other Pub's conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the 227(c) Class were harmed and are entitled to a minimum of $500 in damages for each violation.

93.     Plaintiff and the 227(c) Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

94.     On information and belief, No Other Pub failed to (i) establish and implement written procedures to comply with the national do-not-call rules; (ii) train its personnel in procedures established pursuant to the national do-not-call rules; (iii) maintain a list of telephone numbers No Other Pub may not contact; (iv) employ a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and (v) maintain records documenting this process.

95.     On information and belief, No Other Pub failed to honor the national do-not-call registry, failed to provide "an interactive opt-out mechanism" by which Plaintiff and the 227(c) Class could opt out of future calls, and failed to maintain an "automated, interactive voice- and/or key press-activated opt-out mechanism" by which Plaintiff and the 227(c) Class could call a separate toll-free number and add their numbers to No Other Pub's internal do-not-call list.

96.     No Other Pub's text messages were willful and knowing, in that No Other Pub knew it was sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members registered on the national do-not-call list, but No Other Pub chose to send such text messages anyways.

97.     "Willful ... means that the violator knew that he was doing the act in question. ... A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n.

86 (May 14, 2007) (citations omitted).

98.     Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 227(c) Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 227(c) Class, seeks $1,500 per violation of the TCPA; a declaration that No Other Pub's methods, acts and practices violate the TCPA, 47 U.S.C. § 227, *et seq*.; an injunction prohibiting No Other Pub from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims that are so triable.

Dated: July 17, 2018                    Respectfully submitted,

*/s/ Bill Kenney*
William C. Kenney     Mo. Bar No. 63001
BILL KENNEY LAW FIRM, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105
Telephone: (816) 842-2455
Facsimile: (816) 474-8899
Email: *bkenney@billkenneylaw.com*

*and*

Ari N. Rodopoulos     Mo. Bar No. 58777
WOOD LAW FIRM, LLC
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Email: *ari@woodlaw.com*

*Attorneys for Plaintiff and all others similarly situated*

22

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

ZACHARY SMITH

**PLAINTIFF(S),**            **CASE NO. 1816-CV10998**

VS.                          **DIVISION 18**

TRUMAN ROAD DEVELOPMENT, LLC,

**DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

---

NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **KEVIN DUANE HARRELL** on **05-NOV-2018** in **DIVISION 18** at **09:00 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

At the Case Management Conference, counsel should be prepared to address at least the following:

a.    A trial setting;

b.    Expert Witness Disclosure Cutoff Date;

c.    A schedule for the orderly preparation of the case for trial;

d.    Any issues which require input or action by the Court;

e.    The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ KEVIN DUANE HARRELL
KEVIN DUANE HARRELL, **Circuit Judge**

### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
ARISTOTLE N RODOPOULOS, 1100 Main St., SUITE 1800, KANSAS CITY, MO 64105
*AND*
WILLIAM CHARLES KENNEY, 1100 Main Street, SUITE 1800, KANSAS CITY, MO 64105

Defendant(s):
TRUMAN ROAD DEVELOPMENT, LLC *D/B/A NO OTHER PUB*

Dated: 20-JUL-2018                                    MARY A. MARQUEZ
                                                      Court Administrator

Electronically Filed - Jackson - Kansas City - April 25, 2018 - 05:21 PM

# IN THE 16TH JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

**ZACHARY SMITH, individually and
on behalf of all others similarly situated,**

| | |
|---|---|
| *Plaintiff,* | Case No.: |
| **vs.** | Division: |
| **TRUMAN ROAD DEVELOPMENT, LLC
d/b/a NO OTHER PUB,** | |
| *Defendant.* | |

## SERVICE INSTRUCTIONS

**TO:   CLERK OF THE COURT**

Plaintiff requests that the Clerk of the Court prepare a summons for Defendant in the above-caption cause of action, so that the Cole County Sheriff's Office can serve Defendant's Registered Agent as follows:

Truman Road Development, LLC
R/A: CSC-Lawyers Incorporating Service Company
221 Bolivar Street
Jefferson City, MO 65101

Dated: April 25, 2018

Respectfully submitted,

_/s/ Bill Kenney_

William C. Kenney    Mo. Bar No. 63001
**BILL KENNEY LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105
Telephone: (816) 842-2455
Facsimile: (816) 474-8899
Email: *bkenney@billkenneylaw.com*

*and*

Ari N. Rodopoulos    Mo. Bar No. 58777
**WOOD LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Email: *ari@woodlaw.com*

*Attorneys for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 25, 2018, the foregoing document was electronically filed with the Court's Electronic Filing System and will be served electronically on all registered attorneys of record, with a copy to be served on Defendant's registered agent with the summons and Petition.

_/s/ Bill Kenney_

William C. Kenney

Electronically Filed - Jackson - Kansas City - July 17, 2018 - 02:52 PM

# IN THE 16TH JUDICIAL CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

**ZACHARY SMITH, individually and
on behalf of all others similarly situated,**

                    *Plaintiff,*

**vs.**

**TRUMAN ROAD DEVELOPMENT, LLC
d/b/a NO OTHER PUB,**

                    *Defendant.*

Case No.:  1816-CV10998

Division:  10

## REQUEST FOR ALIAS SUMMONS

**TO:  CLERK OF THE COURT**

Plaintiff requests that the Clerk of the Court issue alias summons for Defendant in the

above-captioned cause of action, so that the Cole County Sheriff's Office can serve Defendant's

Registered Agent as follows:

      Truman Road Development, LLC
      R/A: CSC-Lawyers Incorporating Service Company
      221 Bolivar Street
      Jefferson City, MO 65101

Dated: July 17, 2018

Respectfully Submitted,

_/s/ Bill Kenney_
William C. Kenney    Mo. Bar No. 63001
**BILL KENNEY LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105
Telephone: (816) 842-2455
Facsimile: (816) 474-8899
Email: _bkenney@billkenneylaw.com_

_and_

Ari N. Rodopoulos    Mo. Bar No. 58777
**WOOD LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
T: (816) 256-3582
F: (816) 337-4243
Email: _ari@woodlaw.com_

_Attorneys for Plaintiff and all others
similarly situated_

## CERTIFICATE OF SERVICE

I hereby certify that, on July 17, 2018, the foregoing document was electronically filed with the Court's Electronic Filing System and will be served electronically on all registered attorneys of record, with a copy to be served on Defendant's registered agent with the summons and all pleadings.

_/s/ Bill Kenney_
William C. Kenney

2