ZACHARY SMITH and
BRIAN KAGARICE, individually and
on behalf of all others similarly situated,

        *Plaintiffs*,

vs.

TRUMAN ROAD DEVELOPMENT, LLC
d/b/a NO OTHER PUB, *et al.*,

        *Defendants*.

Case No.:   4:18-cv-670-NKL

Hon. Nanette K. Laughrey

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE OPINION AND TESTIMONY
<u>OF PLAINTIFFS' PROFFERED EXERT DR. MICHAEL SHAMOS</u>**

# TABLE OF CONTENTS

Introduction ...............................................................................................................................1

Background ................................................................................................................................2

Argument ....................................................................................................................................3

    I.    Dr. Shamos Addresses How Defendants' Texting Software Functions, Not What the TCPA Proscribes. .........................................................................................4

Conclusion ................................................................................................................................10

# TABLE OF AUTHORITIES

**United States Supreme Court**

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 596 (1993) ...................................................................................................................3

**United States Courts of Appeal**

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
 644 F.3d 604, 613 (8th Cir. 2011) ..............................................................................................4

*Kuhn v. Wyeth, Inc.*,
 686 F.3d 618 (8th Cir. 2012) ......................................................................................................3

*Marmo v. Tyson Fresh Meats, Inc.*,
 457 F.3d 748 (8th Cir. 2006) ......................................................................................................3

*Satterfield v. Simon & Schuster, Inc.*,
 569 F.3d 946 (9th Cir. 2009) ......................................................................................................5

*Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*,
 320 F.3d 838 (8th Cir. 2003) ......................................................................................................7

*Wood v. Minn. Mining & Mfg. Co.*,
 112 F.3d 306 (8th Cir. 1997) ......................................................................................................4

**United States District Court**

*Tomeo v. CitiGroup, Inc.*,
 No. 13 C 4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) ............................................. 6–7

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
 No. 15-CV-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) ..................................6

*Ameranth, Inc. v. Menusoft Systems Corp.*,
 No. 2:07-CV-271-TJW-CE, 2010 WL 11530915 (E.D. Tex. Sept. 1, 2010) ........................8

*Bakov v. Consol. World Travel, Inc.*,
 No. 15 C 2980, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019) ...............................................6

*CWC Commercial Warehousing, LLC v. Norcold, Inc.*,
 No. 6:15-CV-03312-MDH, 2016 WL 10644035 (W.D. Mo. Oct. 12, 2016) .....................1,

*FedEx Ground Package System, Inc. v. Applications International Corp.*,
 695 F. Supp. 2d 216 (W.D. Pa. 2010) .......................................................................................7

*Fleishour v. Stewart Title Guar. Co.*,
    No. 4:08CV01958 ERW, 2010 WL 1006230 (E.D. Mo. Mar. 16, 2010) ..............................7

*In re Air Crash at Lexington, Kentucky, Aug. 27, 2006*,
    No. CIV.A. 506CV316-KSF, 2008 WL 2954973 (E.D. Ky. July 30, 2008) .........................7

*Keyes v. Ocwen Loan Servicing, LLC*,
    335 F. Supp. 3d 951 (E.D. Mich. 2018) ................................................................................7

*Legg v. Voice Media Group, Inc.*,
    No. 13-62044-CIV-COHN, 2014 WL 1767097 (S.D. Fla. May 2, 2014) ...........................6

*Mey v. Venture Data, LLC*,
    245 F. Supp. 3d 771 (N.D.W. Va. 2017) ..............................................................................5

*Nicholson v. REI Energy, LLC*,
    370 F. Supp. 3d 1199 (D. Or. 2019) .....................................................................................5

*Sherman v. Yahoo! Inc.*,
    997 F. Supp. 2d 1129 (S.D. Cal. 2014) ................................................................................5

*Sterk v. Path, Inc.*,
    46 F. Supp. 3d 813 (N.D. Ill. 2014) .....................................................................................8

*Strauss v. CBE Grp., Inc.*,
    No. 15-62026-CIV, 2016 WL 2641965 (S.D. Fla. Mar. 23, 2016) .......................................6

**<u>Statutes and Regulations</u>**

47 U.S.C. § 227(a)(1) ..................................................................................................................6

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................................................8

# INTRODUCTION

Defendants Truman Road Development, LLC d/b/a No Other Pub ("No Other Pub"), Entertainment Consulting International, LLC, and The Cordish Companies, Inc. (collectively, "Defendants") have moved to exclude the opinion and testimony of Plaintiffs Zachary Smith and Brian Kagarice's ("Plaintiffs") expert Dr. Michael Shamos. In reality, Defendants' motion is largely a repackaging of the arguments advanced in their summary judgment brief, asserting their view of what the appropriate definition of an automatic telephone dialing system ("ATDS") is. Defendants attempt to spin Dr. Shamos's technical analysis of how Defendants' texting platform, TXT Live!, works into a suggestion that he is usurping the role of the Court and the jury, respectively, in (i) interpreting the "correct" definition of an ATDS under the TCPA and (ii) determining Defendants' ultimate liability.[1] At the end of the day, Defendants' only quarrel with Dr. Shamos is that he *describes* how TXT Live! works differently than Defendants' expert—while otherwise agreeing on how the system actually functions at a technical level. While Defendants may be unhappy with Dr. Shamos's descriptions, Defendants' critiques are not valid reasons to exclude the totality of his opinions and testimony through a *Daubert* motion. *See CWC Commercial Warehousing, LLC v. Norcold, Inc.*, No. 6:15-CV-03312-MDH, 2016 WL 10644035, at *1 (W.D. Mo. Oct. 12, 2016) (Harpool, J.) ("Defendant has not provided a sufficient basis for [plaintiff's expert's] exclusion at trial under *Daubert*. Rather, Defendant has merely provided numerous issues it believes renders [plaintiff's expert's] opinion inaccurate. The Court finds Defendant's arguments do not render [plaintiff's expert's] opinions inadmissible.").

---

[1] Defendants purport to take issue with Dr. Shamos's methodology in two sentences, (*see* Mot. at 2, 6), but do not actually provide any argument whatsoever on this point. Instead, the entirety of their Motion is aimed at Dr. Shamos's supposed interpretation of the TCPA, (*id*. at 7–13). They have therefore waived this argument. *See Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) ("[I]nasmuch as [the party's] brief does not support his assertion with any argument or legal authority, he has waived the issue . . .").

1

Defendants' Motion should be denied.

## BACKGROUND

Dr. Shamos is a computer scientist currently teaching at Carnegie Mellon University with an extensive background in networking, wireless technology, and digital payment systems. (Substitute Expert Report of Dr. Michael Shamos ("Shamos Rept.") ¶¶ 2–10, attached as Exhibit A to the Declaration of William C. Kenney, filed contemporaneously as Exhibit 1.)[2] Plaintiffs retained Dr. Shamos in this matter to analyze and address the functionality of the computer system—TXT Live!—that Defendants used to send text messages to Plaintiffs and the putative class. (*Id.* ¶¶ 12, 21–22, 31.) Dr. Shamos's technical explanations of the system's functionality were the only opinions he was asked to provide. (*Id.* ¶ 22.)[3] In particular, he examined whether TXT Live! satisfied some or all of three technical criteria: (1) whether the system uses a random or sequential number generator to both "store" and "produce" telephone numbers and to dial such numbers (which he referred to as "Requirement 1"); (2) whether the system has the capacity—(A) to store telephone numbers to be called, or produce telephone numbers to be called using a random or sequential number generator; and (B) to dial such numbers ("Requirement 2"); and (3) whether the system has the ability to automatically dial telephone numbers without human intervention ("Requirement 3"). (*Id.* ¶¶ 12, 25–27; *see also* Exhibit C, Rebuttal Expert Report of Dr. Michael Shamos §§ II.B, C.)

In order to determine whether the TXT Live! system met any of these technical criteria, Dr. Shamos analyzed the system's source code, including setting up a specialized virtual

---

[2] Unless otherwise specified, all referenced exhibits are attached to the Declaration of William C. Kenney.
[3] *See also* Exhibit B, Plaintiffs' June 14, 2019 Disclosure of Expert Witnesses ("Plaintiffs' Expert Discl.") (identifying Dr. Shamos as a retained expert and providing a brief overview of the scope of his opinions and anticipated testimony).

computing platform and installing a working clone of Defendants' Txt Live software, and creating a test "campaign" to demonstrate how the system selected who would be texted. (Shamos Rept. ¶¶ 32–72, 79–81.) Dr. Shamos also reviewed deposition testimony and related documentation regarding the system. (*Id.* ¶¶ 73–78.) Based on his review, Dr. Shamos rendered an opinion on how TXT Live! stores and produces lists of numbers to be called and sends text messages to them, ultimately concluding that the system met the technical criteria he referred to as Requirements 1, 2, and 3. (*Id.* ¶¶ 82–86.)

## ARGUMENT

No Other Pub's Motion to Exclude Dr. Shamos's opinion and testimony (the "Mot.") should be denied. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony" and "[t]he rule clearly is one of admissibility rather than exclusion." *Shuck v. CNH America, LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (internal quotations and citations omitted). As such, "courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 596, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The Court may admit testimony of a qualified expert witness if "(1) it is based on sufficient facts or data, (2) it is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case." *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (citing Fed. R. Evid. 702). The testimony must also "help the trier of fact to

3

understand the evidence or determine a fact in issue." Fed. R. Evid. 702.[4] "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (internal quotations and citation omitted). Dr. Shamos's technical analyses of TXT Live! easily meet these threshold requirements and are helpful in understanding how the texting system at the heart of this case functions.

Ignoring that their own expert reviewed the same underlying facts and data, performed an identical analysis regarding the same technical criterion, and rendered a similar type of opinion, Defendants nonetheless contend that Dr. Shamos's report and testimony should be excluded. Defendants broadly assert that Dr. Shamos fails to pass muster under *Daubert* and Rule 702 because he rendered impermissible legal opinions. This is without merit. Dr. Shamos made conclusions about the technical functions of the dialing software No Other Pub used, not the law.

## I. Dr. Shamos Addresses How Defendants' Texting Software Functions, Not What the TCPA Proscribes.

Dr. Shamos was asked to analyze the functionality of the software platform that Defendants used to send the text messages at issue in this case. (Shamos Rept. ¶¶ 12, 21, 25–27; Plaintiffs' Expert Disc.) Despite Defendants' protestations to the contrary, (*see generally* Mot. at 7–13), Dr. Shamos was not asked to give any legal opinions or to determine whether Defendants in fact violated the TCPA. Rather, he was provided certain technical criteria regarding telephone

---

[4] While the standard for determining the admissibility of an expert report looks to whether the report would aid the ultimate trier of fact, Plaintiffs have moved for partial summary judgment arguing that there is no disputed issue of material fact as to how TXT Live! operates. Nevertheless, although Plaintiffs believe there is no ultimate factual dispute to be resolved with respect to the ATDS issue, in deciding whether to consider an expert report on summary judgment, the Court must determine whether the report would be admissible at trial. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("Because summary judgment ends litigation without a trial, the court must review the evidence in light of what would be admissible before either the court or jury.").

4

dialing systems and asked to determine whether Defendants' dialing platform did or did not meet them. (Shamos Rept. ¶¶ 25–27.) He was not asked to provide any opinion beyond whether the platform did or did not function according to these principles. Indeed, as is the subject of the parties' respective motions for summary judgment, which are being concurrently briefed, the Court will need to decide the legal significance of this functionality. Put simply, Dr. Shamos is offering an opinion only as to whether Defendants' texting platform satisfies what he calls Requirements 1, 2, or 3. (Shamos Rept. ¶¶ 32–73, 82–85.)[5] He is *not* opining as to whether his Requirements 1, 2, or 3 adequately reflect the statutory definition of an ATDS or how an ATDS should be defined. That, of course, is a legal determination for this Court.

This is hardly remarkable, as experts in TCPA cases are regularly called upon to explain how particular dialing systems work. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) (describing expert's conclusion, in part, that defendant's "telephone system 'stored telephone numbers to be called and subsequently dialed those numbers automatically and without human intervention'"); *Nicholson v. REI Energy, LLC*, 370 F. Supp. 3d 1199, 1202 (D. Or. 2019) (plaintiff's expert concluded that defendant's texting platform had "the capacity to dial telephone numbers from a stored list or database of numbers without human intervention"); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 789 (N.D.W. Va. 2017) (expert report discussed how defendant's "dialing systems have the characteristics of an ATDS"); *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1136 (S.D. Cal. 2014) (denying summary judgment, based in part on expert's conclusion that "'equipment used by the [d]efendants has the capacity to store or produce

---

5   To the extent that the Court finds Dr. Shamos's report to be inartfully worded in that it makes the statement that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (*see* Shamos Rept. ¶ 82), the Court can simply disregard or exclude the phrase ▆▆▆▆▆▆▆▆▆ in favor of "meets" rather than strike the entirety of his analysis. This will in no way affect his overall conclusions. (*See id.* ¶ 86 (concluding that the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆).)

cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers,' and that the equipment 'has the capacity to dial cellular telephone numbers without human intervention'").[6] Dr. Shamos's report here is no different; like Defendants' expert report, it simply explains the functionality of the TXT Live! platform. Indeed, for all of Defendants' handwringing that the technical requirements Dr. Shamos was asked to investigate overlap in part with the definition of an autodialer under 47 U.S.C. § 227(a)(1), (Mot. at 11–12), their own expert was asked to address identical technical requirements. (Exhibit D, Amended Expert Report of Dr. Michael Mitzenmacher ("Mitzenmacher Rept.") ¶ 8 ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.)

Dr. Shamos's technical analyses here are readily distinguishable from the legal opinions stricken in the cases that Defendants cite. For example, in *Legg v. Voice Media Group, Inc.*, the expert specifically sought to testify whether the defendant's dialing platform "me[t] the legal definition of an automatic telephone dialing system." No. 13-62044-CIV-COHN, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014); *see also Strauss v. CBE Grp., Inc.*, No. 15-62026-CIV, 2016 WL 2641965, at *2 (S.D. Fla. Mar. 23, 2016) (rejecting conclusion "as to the legal definition of an ATDS, or the legal implications of using a predictive dialer"); *Tomeo v.*

---

[6] In fact, courts have allowed expert reports and opinions in TCPA cases that go well beyond just explaining how a particular dialing system works (as Dr. Shamos did here) and actually opine on whether a defendant has complied with the law. *See, e.g., Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *5–6 (N.D. Ill. Mar. 21, 2019) (rejecting *Daubert* challenge, allowing "TCPA compliance expert" to testify that defendant's system, among other things, "does not 'encroach upon' TCPA regulations and FCC concerns regarding prerecorded message[s]"); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-06314-YGR, 2018 WL 3707283, at *8 (N.D. Cal. Aug. 3, 2018) (rejecting *Daubert* challenge of expert who opined that "[c]lass members received calls that were made using an ATDS").

*CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *6 (N.D. Ill. Sept. 27, 2018) (same outcome regarding same expert as in *Strauss*); *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 959 (E.D. Mich. 2018) (excluding report proffered by same expert as in *Tomeo* and *Keyes* in part because expert sought to "define[] the governing legal standard" of what an ATDS is under the TCPA). Again, Dr. Shamos is offering an opinion only as to whether TXT Live! satisfies certain criteria, *not* whether those criteria meet the statutory definition of an ATDS.[7]

Defendants also point to two cases in which courts excluded testimony from Dr. Shamos for purportedly offering legal conclusions. (Mot. at 8–9.) But the fact that his testimony was excluded in two cases (out of over 260 in which he has served as an expert (Shamos Rept., Appx. A, "Expert Witness")) has no bearing on the admissibility of his report and testimony in this matter. In any event, those cases are readily distinguishable. Unlike the report here, which takes no position as to what the correct interpretation of an ATDS under the TCPA is, in *FedEx Ground Package System, Inc. v. Applications International Corp.*, a copyright infringement and misappropriation of trade secrets case, Dr. Shamos opined about what was "required under the law." 695 F. Supp. 2d 216, 222 (W.D. Pa. 2010). Furthermore, in that case, Dr. Shamos did not do a source code review or compare the screenshots of the software that was alleged to have been misappropriated. *Id.* at 224. Not so here, where Dr. Shamos went through an exhaustive,

---

[7] *Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003), cited by Defendants at 7, stands for the unremarkable proposition that an expert cannot testify as to "whether federal law was contravened." That case addressed the interpretation of a policy provision in an insurance contract, a question of law. *Id.* Thus, legal conclusions as to whether or not the policy provision applied were appropriately excluded. *Id.*; *see Fleishour v. Stewart Title Guar. Co.*, No. 4:08CV01958 ERW, 2010 WL 1006230, at *1 (E.D. Mo. Mar. 16, 2010); *see also In re Air Crash at Lexington, Kentucky, Aug. 27, 2006*, No. CIV.A. 506CV316-KSF, 2008 WL 2954973, at *7 (E.D. Ky. July 30, 2008) (distinguishing *Southern Pine*, noting that the case "that the case was not about industry standards or practice, but about meeting the requirements for an exclusion under the language of an insurance policy").

7

step-by-step analysis of TXT Live!, complete with excerpts of and citations to the actual source code, numerous screenshots, and references to a multitude of other materials describing TXT Live!'s functionalities. (*See* Shamos Rept. ¶¶ 31–80.) And in *Ameranth, Inc. v. Menusoft Systems Corp.*, another infringement case, the court allowed Dr. Shamos to give background on certain legal principles, such as generally explaining "indirect infringement," but did not allow him to testify in detail about such matters. No. 2:07-CV-271-TJW-CE, 2010 WL 11530915, at *1 (E.D. Tex. Sept. 1, 2010). Here, Dr. Shamos is not opining about the TCPA, or what the legal definition of an ATDS is or ought to be pursuant to it.

To support their argument, Defendants attempts to spin the fact that Dr. Shamos quotes the TCPA in a background paragraph in his report as evidence that he is offering legal conclusions regarding the TCPA's interpretation. (Mot. at 8.) This does not warrant exclusion. *See Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 817 (N.D. Ill. 2014) (rejecting defendant's contention that plaintiff's expert "offer[ed] his opinion as to what he believes the TCPA prohibits, how FCC rulings should be interpreted, and whether certain legal standards have been met in this case," and finding the expert "merely discusse[d] the law and facts to give a background and overview for his report"). This is precisely what Defendants' expert included, as well, incorporating 47 U.S.C. § 227(b)(1)(A)(iii)'s ATDS definition (*see* Mitzenmacher Rept. ¶¶ 7–8), and discussing that he reviewed numerous district and appellate court opinions interpreting the autodialer provision—which he testified ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Exhibit E, Excerpts from the Deposition of Dr. Michael Mitzenmacher, 56:24–57:21).

Similarly, Defendants make much of Dr. Shamos's use of the word "parse" at his deposition when Defendants' counsel asked how he came to his understanding of what the first

8

technical criterion in his report—Requirement 1—meant regarding the phrase to "store or produce." (*See* Mot. at 5, 8.) Dr. Shamos's interpretation of these words was not, nor was it meant to be, a legal interpretation of the phrase's meaning. Instead, Dr. Shamos's "parse" was based on his technical knowledge of how storage in computers works and which he sets out in his report. This led him to conclude that it is illogical in a technical sense for a telephone number to be stored using a random number generator, but logical for a telephone number to be produced using a random number generator. (Shamos Rept. ¶ 25; Exhibit F, Excerpts from the Deposition of Dr. Michael Shamos ("Shamos Dep."), 70:21–71:1.)[8] And Dr. Shamos further admits that there may be different formulations of the terms' meanings, which are accounted for in other technical analyses—Requirements 2 and 3—in his report. (Shamos Rept. ¶¶ 26–27; Shamos Dep. 71:13–19.) Here again, Dr. Shamos is not opining as to which—if any—of these technical requirements satisfies the statutory definition of an ATDS, he is just concluding that TXT Live! meets the technical criteria outlined in Requirements 1, 2 and 3.

For the same reasons, Defendants' criticism of Dr. Shamos's purported interpretation of the TCPA to include smartphones (Mot. at 5, 6, 12–13), misses the mark; Dr. Shamos does not opine on how the TCPA should be interpreted, nor does he conclude that every smartphone is an ATDS. In fact, Dr. Shamos's report doesn't mention smartphones at all. (*See generally* Shamos Rept.) Instead, Defendants cherry-pick responses to questions their counsel asked at Dr. Shamos's deposition, (Mot. at 6), ignoring that Dr. Shamos often pushed back or disagreed with Defendants' counsel. (*See* Shamos Dep. at 116:7–118:2 (disagreeing that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮); 75:19–76:3 (responding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).) And it

---

[8] Notably, as explained in Section II, *infra*, Dr. Mitzenmacher's report is centered around his own interpretation of the same words. (*See, e.g.*, Mitzenmacher Rept. § 2 (arguing ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮)).

9

is beyond dispute that an out-of-the-box iPhone cannot function as TXT Live! did—replete with



(*See id.* 168:13–170:5; Shamos Rept. ¶¶ 55–57, 68–69, 75–77.) Much as Defendants try to repeat these arguments here, they belong in the parties' motions for summary judgment.

Because Dr. Shamos makes no legal conclusions about what the law ought to be or Defendants' liability under it, Defendants' bid to exclude Dr. Shamos's report and testimony on these grounds should be denied.

## CONCLUSION

For the forgoing reasons, Defendants' Motion to Exclude should be denied in its entirety.

Date: November 8, 2019　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Bill Kenney
　　　　　　　　　　　　　　　　　　　　William C. Kenney　Mo. Bar No. 63001
　　　　　　　　　　　　　　　　　　　　**BILL KENNEY LAW FIRM, LLC**
　　　　　　　　　　　　　　　　　　　　1100 Main Street, Suite 1800
　　　　　　　　　　　　　　　　　　　　Kansas City, MO 64105
　　　　　　　　　　　　　　　　　　　　Telephone: (816) 842-2455
　　　　　　　　　　　　　　　　　　　　Facsimile: (816) 474-8899
　　　　　　　　　　　　　　　　　　　　*bkenney@billkenneylaw.com*

　　　　　　　　　　　　　　　　　　　　Benjamin H. Richman (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Michael Ovca (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　**EDELSON PC**
　　　　　　　　　　　　　　　　　　　　350 North LaSalle Street, 14th Floor
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 589-6370
　　　　　　　　　　　　　　　　　　　　Facsimile: (312) 589-6378
　　　　　　　　　　　　　　　　　　　　*brichman@edelson.com*
　　　　　　　　　　　　　　　　　　　　*movca@edelson.com*

　　　　　　　　　　　　　　　　　　　　Rafey S. Balabanian (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　Eve-Lynn J. Rapp (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　**EDELSON PC**
　　　　　　　　　　　　　　　　　　　　123 Townsend Street, Suite 100
　　　　　　　　　　　　　　　　　　　　San Francisco, California 94107
　　　　　　　　　　　　　　　　　　　　Telephone: (415) 234-5262
　　　　　　　　　　　　　　　　　　　　Facsimile: (415) 373-9435
　　　　　　　　　　　　　　　　　　　　*rbalabanian@edelson.com*
　　　　　　　　　　　　　　　　　　　　*erapp@edelson.com*

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs and*
　　　　　　　　　　　　　　　　　　　　*all others similarly situated*

## CERTIFICATE OF SERVICE

　　I hereby certify that, on November 8, 2019, the foregoing document was electronically filed with the Court's Electronic Filing System and will be served electronically on all registered attorneys of record.

　　　　　　　　　　　　　　　　　　　　　/s/ Bill Kenney
　　　　　　　　　　　　　　　　　　　　William C. Kenney